Allen J.
The appellant entered a caveat in the Circuit court of Carroll against the issuing of a grant to the appellee. The caveat rests upon the ground of - the better right in the caveator to the land surveyed. Unless he can show such better right, the judgment in favor of the caveatee must be affirmed, though it might. appear that as against a party showing a right his entry and survey were defective.
It appears from the facts found by the jury, that the land embraced by the entry and survey of the caveatee lies within the boundaries of a grant to Thomas Ruston and John D. Blanchard, dated the 11th December 1795. That, on the 5th September 1795, the said Thomas Ruston conveyed the whole tract to his son Thomas Ruston, jr., and two daughters, Mary and Charlotte Ruston, which deed appears upon its face to have been merely voluntary. It contains no covenant of warranty, and it bears date and was acknowledged before the emanation of the grant. On the 12th of June 1839, the commissioner of delinquent and forfeited lands for Grayson county made a report to the judge in vacation, of lands forfeited to the Literary fund for the nonpayment of taxes charged thereon, and for the failure to enter them on the books of the commissioner of the revenue for said county; which report being examined was affirmed, and ordered to be recorded; and the commissioner was directed to proceed to sell the several tracts of land mentioned in the report. Amongst those tracts is one moiety of the-tract granted to Ruston and Blanchard, reported in the names of Mary and Charlotte Ruston, (the two daughters of Thomas Ruston,) and the other moiety in the name of Thomas Ruston. On the 5th of September 1839, the commissioner returned to said court his report of sales made in pursuance of the order of the judge aforesaid, from which it appeared that the two tracts reported in the names of Mary and Char *196 lotte Ruston, and of Thomas Ruston, had been exposed to sale, and had been purchased by R. Raper, ■ D. Graham and F. Allison. No further order seems to have been made by the court in the premises after the return of the report of sales. The Sth section of the act to amend and explain the laws concerning western land titles, and for other purposes, passed March 30, 1837, Sess. Acts, page 9, provided that it should be the duty of the court, by whose order the sale was made, to direct its commissioner to convey to the purchaser, who should have paid up the whole amount of the purchase money. But such order of the court was rendered unnecessary by the act concerning delinquent lands, passed March 15,1838, Sessions Acts, page 16 ; the 9th section of which authorizes the commissioner to receive the purchase money, and provides that the purchaser shall be entitled to his deed for the land so purchased and paid for, upon application to the commissioner. On the 19th of November 1840, the commissioner, professing to act under the authority of said proceedings, made a deed to a certain George Walton for the use of and in trust for Francis Allison, sr., and for all persons holding an interest in the Wythe lead mines, and now operating under the name and style of the Wythe lead mines company. The deed recites the proceedings, the sale made in pursuance thereof, of one of the tracts in the names of Mary and Charlotte Ruston, for the nonpayment of taxes charged thereon, the other in the name of Thomas Ruston, forfeited for nonentry on the commissioner’s books; that F. Allison, sr. and the persons having an interest in the lead mines became joint purchasers according to certain proportions, which are specified, and the parties named; and the purchase money having been paid, and the purchasers having expressed a desire, in order to promote their convenience, that the legal title should be made to Walton *197 for the use and benefit of Allison, and the persons having an interest in lead mines, the said Walton being one of those described as having an interest, the commissioner proceeds to convey the land to Walton in trust for Allison, and the persons having an interest in the lead mines, in the proportions before named and described. D. Graham, who, by the commissioner’s report of sales, appears to have been one of the joint purchasers, is not named in the deed, nor does it appear what has become of his interest. These are all the facts touching the right of the caveator; nothing is found respecting the possession of the premises, or whether any person has ever entered under the Ruston and Blanchard patent. Nor does it appear what has become of the interest of Blanchard in the land granted. If the caveator could connect himself with the patent of Ruston and Blanchard, then although it might appear he was but a tenant in common of an undivided interest in the land, such interest would perhaps be sufficient to authorize him to enter a caveat against the issuing of a grant upon a survey of part of the land embraced within the limits of the grant. No partition having been made setting off his individual share, his interest in the whole would constitute such a better right as to entitle him, for the benefit of himself an I cutenants, to resort to a caveat to prevent the emanation of a grant to a subsequent locator, who ha l entered the same as waste and unappropriated land.
But in this case it seems to me the caveator has utterly failed in connecting himself with the Ruston and Blanchard title. The commissioner to make sales under the delinquent land laws, under which these proceedings were had, has no interest in the subject of sale. He acts like a commissioner to make sales under a decree of the Chancery court, and is clothed with a *198 mere naked, authority. Having no interest in the land conveyed, the deed of the commissioner could avail ■ nothing where his authority to make it did not appear, unless there had been such a long acquiescence and possession under the deed as to justify a presumption in favor of the deed, as was the case in Robinett v. Preston, 4 Gratt. 141. In this case no such presumption can be raised. The caveator has rested his right upon the deed and the proceedings which led to it. In such a case, and as against a stranger setting up an adverse claim to the title asserted, the recitals in the deed are no evidence. Carver v. Jackson, 4 Peters’ R. 1, 83; Wiley v. Givens, 6 Gratt. 277. In the case of Masters v. Varner, 5 Gratt. 168, a decree of the Chancery court and the marshal’s deed were offered in evidence. The decree did not describe the specific land directed to be conveyed; but it was described with sufficient certainty in the deed. This court held that the recitals in the marshal’s deed were no evidence as against a third person asserting an adverse claim, of the authority of the marshal to convey the specific tract; and that as the decree left it uncertain, it was necessary to produce the whole record, or so much thereof as would show that the land conveyed was the land embraced in the suit, before the deed could be used as evidence. In the case under consideration, the report of sales set out that Baper, Graham and Allison were the purchasers. By the 8th section of the act of March 30, 1837, it was the duty of the court to direct the commissioner to convey to the purchasers upon the payment of the purchase money; and the 9th section of the act of 15th March 1838 declares that the purchaser shall, on application to the commissioner, be entitled to his deed upon the payment of the purchase money. By each act the authority of the commissioner is limited to a conveyance to the purchasers. *199 The deed in this case is to a stranger, if regard be had to the record of the proceedings, which are relied on as authorizing the commissioner to convey. The of Walton nowhere appears as purchaser, or as having any interest in the subject. The recitals of the deed must be looked to as furnishing evidence, not only of his authority to make the deed to a stranger to the proceedings, but also of his authority to make it to him as trustee for himself and others, according to certain proportions therein named. But the conveyance does not show, even by way of recital, what disposition has been made of the interest of D. Graham, one of the joint purchasers, or why his name has been omitted. But for the recitals it would be a conveyance by an officer vested with a naked authority, undertaking to convey tó a person having no connection with the proceedings from which he derived his authority, and who does not appear, from any legal evidence as against the caveatee, to have had any interest in the subject. The deed alone would not preclude the persons who purchased at the sale from calling for a proper deed. The apparently unauthorized act of the commissioner could not destroy their rights. Were they before the court, or had the caveator established a right to claim under the sale by the commissioner, the regularity of that sale and the interest which passed by it would be proper subjects of enquiry. The sale being in the names of the children of Thomas Ruston, it would be necessary to ascertain the effect of the deed to them. .And the sale having been made of the entire tract, a question might arise, which has been discussed in other cases, whether all interests forfeited to the commonwealth, either in the name of the person reported by the commissioner, or of any other persons, passed by such sale to the purchaser. But as the caveator has failed to show, by legal evidence, any *200 right whatever to the land surveyed, or any portion of it, even supposing the sale to. have been regular, and to have entitled the purchasers: upon procuring their deed to- the land sold, the judgment in favor of the caveatee should, I think, be affirmed, with costs.
Daniel and Lee, Js. concurred in the opinion of Judge Alien.
Moncure, J. dissented.
Judgment affirmed.